# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 2028 | **DATE** | 2/19/2004 |
| **CASE TITLE** | Paxson vs. Cook County, Illinois | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   For the reasons stated in the attached memorandum opinion and order, defendant's motion for summary judgment is denied. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | FEB 2 0 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | | |
| | Copy to judge/magistrate judge. | '04 FEB 19 PM 3:07 | date mailed notice | |
| MF | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **REID M. PAXSON,** | ) | **DOCKETED** |
| | ) | FEB 2 0 2004 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No: 02 C 2028 |
| | ) | |
| **COUNTY OF COOK, ILLINOIS,** | ) | Judge John W. Darrah |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Reid M. Paxson, filed suit against Defendant, County of Cook, Illinois ("Cook County"). Plaintiff alleges violations of Title VII of the Civil Rights Act of 1964 and an Intentional Infliction of Emotional Distress claim. Presently before the Court is Cook County's Motion for Summary Judgment. For the reasons that follow, Cook County's Motion for Summary Judgment is denied.

## LEGAL STANDARD

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the court why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on

file to demonstrate, through specific evidence, that a genuine issue of material fact exists and to show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). When reviewing a motion for summary judgment, a court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). However, a metaphysical doubt will not suffice. *Matsushita*, 475 U.S. at 586. If the evidence is merely colorable or is not significantly probative or is no more than a scintilla, summary judgment may be granted. *Anderson*, 477 U.S. at 249-250.

## BACKGROUND

The undisputed facts, for the purposes of this motion, taken from the parties' Local Rule 56.1(a) & (b) statements of material facts (referred to herein as "Pl.'s 56.1" and "Def.'s 56.1") and exhibits, are as follows.

Plaintiff, a Caucasian male, works for Cook County as a "Business Manager II" at Cook County Juvenile Temporary Detention Center (the "Center"). Def.'s 56.1 ¶ 2. Clara Collins is Superintendent and Plaintiff's supervisor at the Center. Def.'s 56.1 ¶ 3; Pl's 56.1 ¶ 2. As Superintendent of the Center, Collins is responsible for managing the facility and making sure that the County's policies and procedures are carried out. Pl.'s 56.1 ¶ 3. Collins has the

authority to request the transfer of an employee who has expressed concerns regarding his or her physical safety at the Center. Pl.'s 56.1 ¶ 10.

In 2001, the racial makeup of the Center workforce was approximately 90% African-American and approximately 5-10% Caucasian. Pl.'s 56.1 ¶ 6. Around that time, the racial makeup of Center residents was approximately 75% African-American, 20% Hispanic, and 5% Caucasian. Pl.'s 56.1 ¶ 7.

On May 9, 2001, a regularly scheduled labor-management meeting was held, and a discussion of payroll issues took place. Def.'s 56.1 ¶ 4. Ray Bialek – an African-American Field Representative for the Fraternal Order of Police – Collins, and Plaintiff attended this meeting. Def.'s 56.1 ¶¶ 5-6; Pl.'s 56.1 ¶ 16. On May 16, 2001, Bialek wrote a letter to Collins complaining that the conduct of Plaintiff at the meeting was unprofessional, abusive, threatening, and unstable and that Plaintiff battered him. Def.'s 56.1 ¶ 6; Pl.'s 56.1 ¶¶ 14-15.

On May 18, 2001, Plaintiff wrote a memorandum to Collins complaining about what occurred at the meeting. Def.'s 56.1 ¶ 7. On June 15, 2001, Plaintiff sent a second memorandum to Collins requesting that Bialek's allegations be formally refuted in writing. Def.'s 56.1 ¶ 8. Although Collins decided that Bialek's description of the events that transpired at the meeting lacked merit, Collins did not take any steps to refute those allegations, side with Plaintiff, or attempt to meet with Plaintiff to discuss his requests. Pl.'s 56.1 ¶¶ 14, 16. On July 3, 2001, Plaintiff sent a memorandum to Collins complaining that she had both failed to investigate the allegations made by Bialek after the labor-management meeting and write a letter formally refuting the allegations. Def.'s 56.1 ¶ 12.

3

Although Collins was aware soon, after she started working at the Center, from conversations with two other Center employees, of remarks that Plaintiff was holding Ku Klux Klan meetings in his office, she believed the allegations of Klan activities there was a joke. Pl.'s 56.1 ¶¶ 22-23, 28. Collins, as Superintendent of the Center, has the authority to initiate an inquiry into possible misconduct by county employees at the Center. Pl.'s 56.1 ¶ 27. Collins did not discuss the allegations with Plaintiff. Pl.'s 56.1 ¶ 24.

On or about June 26, 2001, after hearing unspecified remarks from individuals suggesting that Ku Klux Klan ("KKK") meetings were being held in Plaintiff's office, Collins asked Assistant Superintendent Willie Ross if he knew anything about the rumors. Def.'s 56.1 ¶ 10. Ross then went to Plaintiff's office and asked Plaintiff if he was running the KKK out of his office. Plaintiff asked Ross about where he heard this information, and Ross revealed that Collins was the source. Def.'s 56.1 ¶ 11.

Upon hearing from Ross that Collins was discussing allegations of KKK activities, Plaintiff immediately contacted Collins by phone to discuss the issue. Plaintiff was very upset about the rumors. Pl.'s 56.1 ¶ 31. On July 3, 2001, Plaintiff sent a memorandum to Collins complaining that she had failed to investigate the allegations that there were KKK meetings in Plaintiff's office and that she had failed to investigate the allegation that he was allied with Ross and a third employee in a "character assassination" of one of the floor managers. Def.'s 56.1 ¶ 12. However, at no time did Collins take any additional steps to investigate the allegations herself. Pl.'s 56.1 ¶¶ 26, 34.

Administrative leave with pay is a type of leave available for Cook County employees under unique circumstances where an individual is placed on leave for Cook County's interest.

4

Pl.'s 56.1 ¶ 17. Administrative leave is granted on a case-by-case basis and is based upon the recommendation of an administrator where the affected employee is either a danger to the institution or there is some other reason the person should be removed immediately before any other process is initiated. Pl.'s 56.1 ¶¶ 17-18. These reasons could include instances where the affected employees safety may be threatened. Pl.'s 56.1 ¶ 18. There is no specific limitation on the length of a period of administrative leave with pay. Pl.'s 56.1 ¶ 21.

Collins, as Superintendent of the Center, has the authority to recommend that an employee be granted administrative leave with pay; however, Collins would not have final authority to grant administrative leave. Pl.'s 56.1 ¶ 19. Collins also has the authority to recommend administrative leave with pay when an employee has been physically harmed on the premises, and she has the ability to influence the final decision-maker in making a determination as to whether such leave should be granted. Pl.'s 56.1 ¶ 20.

On July 9, 2001, Plaintiff did not report for work. Def.'s 56.1 ¶ 13. On July 12, 2001, Plaintiff submitted a request to the Cook County Department of Human Resources seeking an administrative leave with pay because of job stress resulting from allegations of criminal behavior and allegations by Collins of KKK activities. Def.'s 56.1 ¶ 14. A letter from Plaintiff's medical doctor, Dr. Brian Stratta, accompanied his request and stated that Plaintiff is undergoing acute stress disorder. Dr. Stratta further stated that Plaintiff is medically required to have a leave of absence from work for thirty days. Def.'s 56.1 ¶ 15.

On July 13, Collins wrote a letter to Dr. Stratta informing him that, based on his letter, Plaintiff was eligible to apply for a medical leave of absence. Def.'s 56.1 ¶ 16. On August 7, 2001, Collins sent a letter to Plaintiff advising him of his benefit time status, inviting

him to complete the medical leave documents, and informing him that, absent an application for medical leave or vacation, Plaintiff would be in zero pay status on August 9, 2001. Def.'s 56.1 ¶ 17.

Plaintiff then sent more correspondence demanding that Collins place him on administrative leave. Def.'s 56.1 ¶ 25. Collins responded to these memoranda and referred him back to the July 13, 2001 letter that explained other options for medical leave. Def.'s 56.1 ¶ 26. On August 14, 2001, Plaintiff submitted another letter from Dr. Stratta recommending an additional forty-five-day leave of absence while being treated for acute stress disorder. Def.'s 56.1 ¶ 29. On two later occasions, Dr. Stratta wrote that Plaintiff's leave should be extended and that he could only return to work if placed in a different location. Def.'s 56.1 ¶¶ 34-35.

On November 7, Plaintiff was notified that his application for disability benefits was approved. Def.'s 56.1 ¶ 36. Thereafter, Dr. Stratta once again wrote Collins to extend Plaintiff's leave and state that he could only return to work if placed in a different location. Def.'s 56.1 ¶ 37. On September 24, 2002, Dr. Stratta wrote that Plaintiff should not return to work at the Center. Def.'s 56.1 ¶ 38. However, on March 3, 2003, Dr. Stratta wrote that Plaintiff could return to work at the Center. Def.'s 56.1 ¶ 39. In May 2003, Plaintiff returned to work in the position of Business Manager II at the Bureau of Public Safety. Def.'s 56.1 ¶ 40.

On August 8, 2001, Collins received notice that graffiti had been found over the Business Manager's office door. Def.'s 56.1 ¶ 18. When Collins went downstairs, she observed the letters "KKK," 3 inches in height, marked in black marker on the door frame above Plaintiff's office. The incident on August 8 was the only time Collins observed the letters KKK written as graffiti

in the Center; and Plaintiff, who had not been at work since July 9, 2001, was not there that day. Def.'s 56.1 ¶ 21.

After viewing the graffiti, Collins reported it to Patricia Shymanski, Chief of Staff to Cook County Board President John Stroger. Def.'s 56.1 ¶ 23. During the telephone call with Shymanski, Collins told her that people at the Center were "buzzing" about the fact that the letters were on Plaintiff's office and requested authority to remove them. Pl.'s 56.1 ¶ 41. Collins recognized placing graffiti over Plaintiff's door was a serious matter. Pl.'s 56.1 ¶ 53. Shymanski, who also recognized the fact that the letters KKK would be offensive to people at the Center, supported Collins in her judgment that the graffiti should be quietly removed. Def's 56.1 ¶ 24; Pl.'s 56.1 ¶¶ 42-43, 46.

However, Shymanski did not direct Collins or anyone else to investigate the incident involving the placement of KKK on Plaintiff's door. Pl.'s 56.1 ¶ 44. The KKK letters were removed from Plaintiff's door before Collins or Shymanski could talk to everyone in the facility. Def.'s Resp. to Pl.'s 56.1 ¶ 47. Collins did not take any photographs of the graffiti, nor did she have anyone take fingerprints or take any other steps to investigate the incident prior to having the letters removed. Pl.'s 56.1 ¶ 48. Collins did not interview anyone regarding the KKK graffiti over Plaintiff's door, nor did she contact any law enforcement authority to look into the graffiti. Pl.'s 56.1 ¶ 51.

On August 28, 2001, David Wells, from the Office of the Inspector General of Cook County, commenced an investigation of those issues raised by Plaintiff in his August 8 and 9 memoranda. Specifically, Wells investigated the alleged threats against Plaintiff made by

members of the Illinois Fraternal Order of Police, the rumors of Plaintiff's KKK involvement, and the graffiti discovered above Plaintiff's office. Def.'s 56.1 ¶ 30.

Following Plaintiff's departure on leave from his position at the Center on July 9, 2001, his work was partly preformed by John Gibbs and Kim Gilmore. Both are African-American individuals. Def.'s Resp. to Pl.'s 56.1 ¶ 12. If Plaintiff remained at the Center, he would have been eligible to apply for a job in the newly created position of Chief Financial Officer. The Chief Financial Officer position is currently held by John Gibbs. Def.'s Resp. to Pl.'s 56.1 ¶ 13.

## ANALYSIS

Plaintiff brought a three-count Complaint against Defendant. Count I alleges that Plaintiff was the victim of disparate treatment. Count II alleges that Plaintiff's work environment was hostile. Count III alleges a claim of intentional infliction of emotional distress by Defendant.

*Disparate Treatment*

Plaintiff can prove he was the victim of disparate treatment by using either the direct method or the indirect method. *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000) (*Radue*).

The direct method requires Plaintiff to present "enough evidence, whether direct or circumstantial, of discriminatory motivation to create a genuine issue for trial." Plaintiff must also establish that the discriminatory motivation caused the adverse employment action. *See Radue*, 219 F.3d at 616-617.

However, direct evidence is hard to produce because the employer will rarely admit that his or her actions were based on a discriminatory animus. *Radue*, 219 F.3d at 616. Here, Plaintiff concedes that he does not have any statement by Collins or any other superior at the

Center indicating that he suffered an adverse employment action because of a discriminatory animus.

Plaintiff may also rely on circumstantial evidence to satisfy the direct method. *Radue*, 219 F.3d at 616. Plaintiff alleges that Collins took part in spreading false rumors that Plaintiff was a member of the KKK. Plaintiff bases this allegation largely on the affidavit of Ross.

The fourth paragraph of Ross's affidavit states that he has "personal knowledge that Ms. Collins also discussed the rumors of [Plaintiff's] alleged Ku Klux Klan membership/activity with other employees of the [Center] . . . ." The statement, which Defendant claims to be hearsay, appears to be admissible under Federal Rule of Evidence 801 and tends to show that Collins helped to spread the rumor that Plaintiff was involved with the KKK. Defendant argues that this statement only shows that Collins attempted to informally investigate the rumors. However, Defendant has failed to present any affidavits, depositions, answers to interrogatories, or admissions demonstrating that Collins took formal actions to investigate and prevent the spread of rumors stating that Plaintiff was involved with the KKK. Therefore, a genuine issue of material fact exists as to whether Collins informally investigated the KKK accusations and rumors or helped to spread these rumors.

Plaintiff must next demonstrate that he suffered an adverse employment action. In order to establish an adverse employment action, a plaintiff must establish a materially adverse change in the terms, conditions, or privileges of employment. A number of employment actions, other than reducing pay or terminating an employee's job, can qualify as an adverse employment action. Rather, whether an employment action is adverse depends on the facts of each particular

case; and these actions can be blatant or subtle. *See Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 691 (7th Cir. 2001).

Here, Plaintiff was denied a request for paid administrative leave he attempted to take as a result of the harassing conduct at the Center. The failure to grant Plaintiff administrative leave had a direct financial impact on Plaintiff because he was forced to take paid leave which he was entitled to hold and use for other purposes or receive compensation for upon separation from employment. In addition, while Plaintiff was on leave, he lost the opportunity to apply for the newly created position of Chief Financial Officer. Collins herself testified that Plaintiff would have been eligible for this position. Accordingly, a genuine issue of material fact exists as to whether Plaintiff suffered an adverse employment action.

Defendant also claims that Plaintiff has failed to show that any discriminatory animus was related towards any employment decision. Defendant contends that Collins did not have the authority to grant administrative leave. However, as Defendant concedes, Collins, as Superintendent of the Center, could have recommended Plaintiff for administrative leave. Moreover, it is undisputed that administrative leave is based upon the recommendation of the relevant administrator. A genuine issue of material fact thus exists as to whether any discriminatory animus was related towards the decision to not grant Plaintiff administrative leave.

Plaintiff has demonstrated that a genuine issue of material fact exists as to whether he was the victim of disparate treatment. Accordingly, Defendant's motion for granted summary judgment as to Count I of Plaintiff's Complaint is denied.

*Hostile Work Environment*

Plaintiff presents multiple reasons for why his work environment was allegedly hostile. First, Plaintiff contends that Collins helped to further rumors that Plaintiff was a member of the KKK and that she failed to address this issue. Second, Plaintiff argues that Collins allowed other individuals to spread the accusation that Plaintiff battered an African-American, Bialek, without taking steps to address these problems.

"To prevail on a hostile work environment racial harassment claim, the plaintiff must show that his work environment was both subjectively and objectively hostile." To be an objectively hostile work environment, a reasonable person must find the environment hostile or abusive. *McPhaul v. Madison County Bd. of Comm'rs*, 226 F.3d 558, 556-57 (7th Cir. 2000) (*McPhaul*). The hostile work environment must be so severe or pervasive to alter the conditions of the victim's working environment. *Robinson v. Sappington*, 351 F.3d 317, 329 (7th Cir. 2003). Courts should consider the totality of the circumstances surrounding the work environment, including "the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating; or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *McPhaul*, 226 F.3d at 557.

Multiple instances of verbal harassment directed at a plaintiff would be actionable. *See Cerros v. Steel Techs., Inc.*, 288 F.3d 1040, 1047 (7th Cir. 2002). However, a single offensive statement or statements made in "random office banter" are not actionable. *Salvadori v. Franklin Sch. Dist.*, 293 F.3d 989, 997 (7th Cir. 2002); *Logan v. Kautex Textron N. Am.*, 259 F.3d 635, 641 (7th Cir. 2001).

11

Here, Plaintiff claims that Collins furthered rumors of Plaintiff's involvement with the KKK by speaking with other employees and by taking no affirmative steps to address the rumors. Plaintiff further states that Collins ignored the rumors and failed to take affirmative steps to address the issue and allowed other individuals to propagate the accusation that Plaintiff battered Bialek without taking any steps to address these accusations. In response, Defendant states that Collins determined the rumors of the Plaintiff's alleged involvement with the KKK and Plaintiff's alleged battery of Bialek were not credible.

Based on these contentions, a genuine issue of material fact exists as to whether these actions forced Plaintiff to work in an objectively hostile work environment. Defendant has failed to present any affidavits, depositions, answers to interrogatories, or admissions demonstrating that Collins took affirmative steps to stop the spread of these rumors at the Center. Thus, whether Collins informally investigated the accusations and rumors or helped to spread these rumors is a genuine issue of material fact not appropriate to resolve on summary judgment.

Defendant also claims that Plaintiff, based on his prior employment history, could not be subjectively fearful of any discriminatory ridicule. However, it is uncontested that Plaintiff took medical leave from his employment at the Center. Whether Plaintiff took this leave because of his subjective fears of the employment environment is a genuine issue of material fact not appropriate to resolve on summary judgment. Accordingly, Defendant's motion for summary judgment on Plaintiff's hostile work environment claim is denied.

*Intentional Infliction of Emotional Distress*

To succeed on a claim of intentional infliction of emotional distress, Plaintiff must establish that: "(1) the defendant's conduct was extreme and outrageous; (2) the defendant either

12

intended that his conduct would cause severe emotional distress or knew that [a] high probability existed that his conduct would cause severe emotional distress; and (3) the defendant's conduct actually caused severe emotional distress to the plaintiff." *Sanglap v. LaSalle Bank, FSB*, 00 C 1663, 2002 U.S. Dist. LEXIS 335, at *2 (N.D. Ill. Jan 11. 2002) (*Sanglap*).

Conduct is extreme and outrageous if, upon reciting the facts to an average member of the community, resentment would be aroused against the actor and the average member of the community would scream "Outrageous!" *Sanglap*, 2002 U.S. Dist. LEXIS 335, at *3. Extreme and outrageous conduct must go beyond all possible bounds of decency. Mere insults, threats, annoyances, or other petty trivialities do not rise to the level of extreme and outrageous conduct. *Sanglap*, 2002 U.S. Dist. LEXIS, at * 3.

In this case, a genuine issue of material fact exists over whether the complained of conduct was extreme and outrageous. Plaintiff argues that Collins knew that rumors existed stating Plaintiff was in the KKK and that Collins furthered these rumors by discussing them with other employees at the Center. Defendant claims that Collins only discussed the rumors with Ross in a confidential inquiry.

As stated above, whether Collins informally investigated the accusations and rumors or helped to spread these rumors is a genuine issue of material fact not proper to resolve on summary judgment. It is also a genuine issue of material fact as to whether promulgating these rumors raised to the level of extreme and outrageous conduct. Therefore, Defendant's motion for summary judgment on Plaintiff's intentional infliction of emotional distress claim is denied.

13

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is denied.

Dated: February 19, 2004

JOHN W. DARRAH
United States District Judge